2012 VT 71

## State of Vermont v. Paul Bourn

[58 A.3d 236]

No. 11-161

Present: **Reiber, C.J., Dooley, Skoglund, Burgess and Robinson, JJ.**

Opinion Filed August 31, 2012

---

*Christina Rainville*, Bennington County Chief Deputy State's Attorney, Bennington, for Plaintiff-Appellee.

*William A. Nelson*, Middlebury, for Defendant-Appellant.

¶ 1. **Skoglund, J.** Defendant Paul Bourn was convicted in the superior court of two counts of aggravated assault with a deadly weapon, 13 V.S.A. § 1024(a)(5), following an incident where he pointed an unloaded muzzleloader toward two police officers who were attempting to remove him from a home. He appeals his convictions, arguing first that the court committed reversible error by refusing to instruct the jury that the charge of aggravated

assault with a deadly weapon requires proof of specific intent to threaten, and second, that such intent may be negated by the defendant's diminished capacity. Holding that our aggravated assault statute requires specific intent, we reverse.

¶ 2. Defendant, his brother, and the homeowner were drinking and generally "hanging out" at the homeowner's residence in Bennington. According to the homeowner, at one point defendant became "extremely agitated, very upset, just totally different." He began arguing with his brother, and generally became "hysterical." Police were dispatched to the residence, and two officers responded. The officers testified that the homeowner asked them to remove defendant from inside the house. When the officers entered the house, defendant got up from a couch and walked out of the living area and down the hallway towards the bathroom, where he stopped and stood partially in the room and partially in the hallway. The officers informed defendant that he needed to leave the residence. Defendant answered with a stream of obscenities and stated that he was being "deployed for the military," and that he "had to go to war and . . . was going to die there." Defendant is not, nor has he ever been, a member of the armed forces.

¶ 3. After continuing verbal outbursts, the officers informed defendant that he was under arrest and proceeded down the hallway towards him. In response to their advance, defendant replied, "I have a gun down here." He then emerged into the hallway holding a muzzleloader in his right hand by the forestock,[1] in front of the trigger guard, with the muzzle pointing down at the floor. Although not immediately apparent, the muzzleloader lacked a primer and was not capable of firing.[2] The officers drew their side arms, and one officer said, "Show us your hands." Defendant, facing the officers, raised the muzzle towards the ceiling in a continuous arc. In the course of this sweeping motion, the muzzle briefly pointed down the hallway to where the officers were standing. One officer testified that defendant never

---

[1] The forestock on a muzzleloader is located in front of the trigger guard, on the underside of the barrel. By holding the muzzleloader in this way, defendant was not capable of pulling the trigger without repositioning his grip on the weapon.

[2] Although the weapon was incapable of firing at all times during the incident, it is still considered a deadly weapon for purposes of the aggravated assault statute. See *State v. Longley*, 2007 VT 101, ¶ 8, 182 Vt. 452, 939 A.2d 1028 ("[T]here is no requirement that a firearm be loaded or operable to be a 'deadly weapon.' ").

leveled the gun at the officers. After a confrontation where the officers employed pepper spray and batons, defendant was handcuffed and placed under arrest.

¶ 4. The State brought six separate charges against defendant, including two counts of aggravated assault in violation of 13 V.S.A. § 1024(a)(5) for actions against each arresting officer. At a jury trial in December 2010, he was acquitted of all charges except for the two counts of aggravated assault. He appeals his convictions.

¶ 5. To understand the arguments on appeal, we must look back at what happened a year before trial. In December 2009, the State and defendant negotiated a plea agreement where defendant would plead guilty to one count of aggravated assault and one count of resisting arrest. In return, the State would dismiss the remaining four charges and cap the sentence recommendation at eight years, with the defense free to argue for less. The plea was presented to the trial court. During the plea colloquy regarding the agreed charge, to wit, aggravated assault, 13 V.S.A. § 1024(a)(5) ("A person is guilty of aggravated assault if the person . . . is armed with a deadly weapon and threatens to use the deadly weapon on another person."), defendant agreed that he had held the rifle as described and that the police officers may have *felt* threatened but maintained that he did not *intend* to threaten the officers with his actions. The judge stopped the colloquy, stating that 13 V.S.A. § 1024(a)(5) was a specific-intent crime. The judge said: "[t]here needs to be an intent to threaten. It's not a strict liability offense. . . . Even if you don't intend to carry out the threat, you need to intend to threaten." Defendant eventually stated: "I feel he was threatened when I brought the rifle up." The court allowed defendant to enter his plea.

¶ 6. When defendant returned to court for his sentencing hearing in May 2010, the question of defendant's intent arose again. The court had reviewed the audio recording of the earlier plea hearing and again expressed concern that defendant was not admitting to the intent element of aggravated assault. With defendant still not admitting an intent to threaten, the judge allowed defendant to withdraw the plea and go to trial.

¶ 7. A different judge presided over the trial in December 2010. At the jury-instruction conference, defense counsel argued that aggravated assault was a specific-intent crime and that defendant was entitled to a diminished capacity instruction in connection with those charges. The State argued to the contrary. The court

agreed with the prosecution, finding the aggravated assault offense as charged was a crime of general intent. Accordingly, the court instructed the jury: "The issue is whether [defendant] intended to do the actions or words that are alleged to be threatening and did not act by accident or mistake. The State does not have to prove he specifically intended to threaten the officers." The court also instructed the jury that diminished capacity did not vitiate the aggravated assault charges:

> The issue of diminished capacity due to voluntary intoxication has been raised by the evidence. This applies to the State's burden to prove defendant's intent to commit the offenses under counts three, four and five. It does not apply to counts one and two [i.e., the charges of aggravated assault with a deadly weapon]. Evidence that he was under the influence of intoxicants or affected by them may be relevant in determining whether he had the mental capacity to form the intent necessary for counts three, four and five.

■ ¶ 8. The jury found defendant guilty of the two counts of aggravated assault and not guilty of the other charges. On appeal, defendant contends that aggravated assault under 13 V.S.A. § 1024(a)(5) is a specific-intent crime, and to find defendant guilty, the State must prove an intent to threaten. Accordingly, defendant claims he was entitled both to a jury instruction to that effect and to raise a diminished capacity defense to the charges. We hold that aggravated assault is a specific-intent crime, and the verdict of the superior court must be reversed for a new trial on those charges.

¶ 9. Section 1024 of Title 13 governs all forms of aggravated assault. Subsection (a)(5) states that a person is guilty of aggravated assault if the person "is armed with a deadly weapon and threatens to use the deadly weapon on another person." The State argues that, as the other four subsections in section (a) all contain language of intent, the Legislature must have intended § 1024(a)(5) to be a general-intent crime. Compare 13 V.S.A. § 1024(a)(5) (containing no explicit language requiring that the actor specifically intends to threaten the other person), with *id.* § 1024(a)(1)-(4) (specifying mens rea requirements such as "purposely," "knowingly," and "intentionally"). However, the lack of

such a definitional component does not convert § 1024(a)(5) into a crime of general intent.

¶ 10. Previously, this Court has recognized that intent may be implied where not expressly stated in a statute. See *State v. Audette*, 149 Vt. 218, 221, 543 A.2d 1315, 1316 (1988) (partially overruled on other grounds). "When the Legislature is silent as to the mens rea required for a particular offense, this Court will not simply assume that the statute creates a strict liability offense, but will try to determine the intent of the Legislature." *State v. Francis*, 151 Vt. 296, 307, 561 A.2d 392, 398 (1989) (quotations omitted). Both *Audette* and *Francis* relied on the United States Supreme Court's decision in *Morissette v. United States*, 342 U.S. 246, 263 (1952). "[M]ere omission from [the statute] of any mention of intent will not be construed as eliminating that element from the crimes denounced." *Id.* at 263.

¶ 11. We have long held as a general rule that aggravated assault is a specific-intent crime. *State v. D'Amico*, 136 Vt. 153, 156, 385 A.2d 1082, 1084 (1978). As recently as this year, we have consistently repeated this statement, though not specifically addressing 13 V.S.A. § 1024(a)(5). *State v. Kolibas*, 2012 VT 37, ¶ 17, 191 Vt. 474, 48 A.3d 610; *State v. Russell*, 2011 VT 36, ¶ 5, 189 Vt. 632, 22 A.3d 455 (mem.) (interpreting § 1024(a)(2)). Where we have examined § 1024(a)(5), we have affirmatively declared that specific intent is a required element. *State v. Kriskov*, No. 2011-150, 2011 WL 7153911, at *1 (Vt. Dec. 21, 2011) (unpub. mem.), available at http://www.vermontjudiciary.org/d-upeo/upeo.aspx. In *Kriskov*, we stated that while the Legislature did not include an intent element within § 1024(a)(5), "[i]mplicit in this scheme is a necessary specific intent to threaten." *Id.* Though not precedential, *Kriskov* provides support for our conclusion that § 1024(a)(5) is included in the general rule that specific intent is a necessary element of the crime of aggravated assault. *Id.*

¶ 12. In *State v. Sargent*, this Court read a kidnapping statute to include an element of intent, where the statute lacked specific language regarding the requisite mens rea. 156 Vt. 463, 465, 594 A.2d 401, 402 (1991). In *Sargent*, the jury instructions charged that the defendant could be found guilty of this felony if the prosecution proved that he *knew or should have known* his actions would cause the physical confinement to the victim. *Id.* at 464-65, 594 A.2d at 402. We reversed, finding this "should have

known" objective standard inappropriate for a felony charge that required a subjective inquiry into the defendant's mens rea. *Id.* at 465, 594 A.2d at 402.

▮ ¶ 13. Furthermore, were we to construe § 1024(a)(5) as a general intent crime, as the State argues and the trial judge instructed, two different statutes — one a misdemeanor, one a felony — would govern the same conduct but result in different penalties. The crime of reckless endangerment of another person, defined under 13 V.S.A. § 1025, occurs when "a person knowingly points a firearm at or in the direction of another, whether or not the actor believed the firearm to be loaded, and whether or not the firearm actually was loaded." This misdemeanor charge carries a possible sentence of one year, a fine of not more than $1000, or both. 13 V.S.A. § 1025. The felony aggravated-assault charge against the defendant carries a possible sentence of five years, a fine of $5000, or both. *Id.* § 1024(c). Where two statutes govern the same conduct and carry different penalties, there must be some logical reason for one to carry the higher penalty. It stands to reason that because aggravated assault carries a higher penalty, it also requires a higher standard of moral culpability, i.e., specific intent.

¶ 14. As a direct consequence of the erroneous ruling on intent, defendant was improperly denied his right to assert a diminished capacity defense to the two aggravated assault charges. The court, defendant, and the State all agreed on the law of diminished capacity: that defendant's severe intoxication could negate a requisite element of intent. Diminished capacity serves to negate intent in crimes requiring proof of specific intent. *State v. Joyce,* 139 Vt. 638, 639-40, 433 A.2d 271, 272 (1981). Because the aggravated assault counts were improperly construed as crimes of general intent, this defense was not included in the jury charge for these offenses.

¶ 15. There is no question that the level of defendant's intoxication was sufficient to warrant an instruction on diminished capacity, as evidenced by the court so charging on each count that required an element of specific intent. The trial court found that the issue of defendant's intoxication was "raised by the evidence" and applied to counts three, four, and five. Accordingly, the court charged the jury to consider defendant's diminished capacity on these counts. The State did not object. It is worth noting that on

every count where this defense was available to defendant, the jury returned a verdict of not guilty. As 13 V.S.A. § 1024(a)(5) is a crime requiring specific intent, this defense should have been included in the jury charge. It was not, and this was error.

■ ¶ 16. "[O]ne of the criminal law's most basic principles is that a person is not criminally liable for causing a bad result if he or she did not have some culpable mental state with respect to that result." *Sargent*, 156 Vt. at 465, 594 A.2d at 402 (quotations and alterations omitted). "[A] person's criminal liability for an act should be proportioned to his or her moral culpability for that act." *State v. Stanislaw*, 153 Vt. 517, 525, 573 A.2d 286, 291 (1990) (quotations omitted). The objective inquiry charged at trial, requiring no subjective moral culpability, does not comport with this proportional maxim. To remain distinct from the related misdemeanor, felony aggravated assault with a deadly weapon requires greater culpability than reckless conduct.

■ ¶ 17. We hold that a conviction for aggravated assault under 13 V.S.A. § 1024(a)(5) requires that the actor subjectively intend to threaten another person with a deadly weapon. Accordingly, the accused is entitled to assert appropriate defenses that rebut the State's arguments on this point. Because the jury charge at defendant's trial was not consistent with our holding, he is entitled to a new trial on these counts.

*Reversed.*