2013 VT 69

## State of Vermont v. Michael Cahill

[80 A.3d 52]

No. 12-085

Present: Reiber, C.J., Dooley, Skoglund, Burgess and Robinson, JJ.

Opinion Filed August 9, 2013

*William H. Sorrell*, Attorney General, and *David Tartter*, Assistant Attorney General, Montpelier, for Plaintiff-Appellee.

*Matthew F. Valerio*, Defender General, and *Rebecca Turner*, Appellate Defender, Montpelier, for Defendant-Appellant.

¶ 1. **Burgess, J.** Defendant Michael Cahill appeals from superior court convictions for aggravated assault with a deadly weapon and reckless endangerment following an incident where he pointed a loaded firearm at a farmhand. Defendant argues that the court erred in denying his motion for judgment of acquittal, improperly instructing the jury on the elements of aggravated assault, and convicting him of both aggravated assault and reckless endangerment. We affirm defendant's aggravated assault conviction and remand for vacatur on either the reckless endangerment conviction or the aggravated assault conviction.

¶ 2. The relevant facts are undisputed. The gunplay at issue in this case arose out of an ongoing dispute between defendant and his farmer neighbor. Defendant raised vegetables in fields next to his neighbor's dairy farm in Guildhall. Defendant and the farmer had a history of conflict over the farmer's practice of spreading liquid manure on his fields, which defendant believed contaminated his gardens with E coli bacteria. Defendant and the farmer ultimately reached an agreement in the fall of 2009 that the farmer would not spread manure past the halfway point in the field directly adjacent to defendant's property.

¶ 3. On July 1, 2010, the farmer directed his farmhand to spread manure on the field adjacent to defendant's property. The farmer warned the farmhand that a confrontation with defendant might arise and instructed the farmhand not to cross the agreed-

upon halfway point. Defendant saw the farmer's manure-spreading truck approach the halfway line and became very angry. Defendant strode into the field toward the farmer's truck with a .45 pistol and stopped about twenty-five yards from the truck. Defendant then cocked a shell into his pistol and pointed it at the farmhand for a few seconds before turning the pistol to the right and firing it toward the woods. The farmhand called the farmer, who arrived at the field shortly thereafter.

¶ 4. Defendant confronted the farmer, and the two men argued loudly about the manure. Defendant became more enraged during this exchange and struck the farmer's truck. The farmer then drove off and called the police.

¶ 5. Defendant waited at his home for the police to arrive. While waiting, defendant fired his pistol at the base of a bird feeder on his property several times. Defendant also called a reporter and a health department official in an attempt to have them report on the story. The Essex County Sheriff went to defendant's residence along with Vermont State Police. After the officers arrived, defendant took pictures of the scene with his camera because reporters were not present to document the officers' arrival. In a fifteen-minute standoff with the officers, defendant argued with them before approaching. Defendant eventually told the officers that he brought his gun to the field but did not shoot it until he was back on his property. Defendant also explained that he wanted to draw publicity to his personal campaign against the manure spreading because he was unable to get assistance from the Environmental Protection Agency. After arresting defendant, the police returned to the field with a metal detector and discovered a .45 caliber round with a spent casing nearby, supporting the contention that defendant fired a shot while in the field, as described by the farmhand. At trial, both the farmhand and another witness testified that defendant pointed his gun at the farmhand in the field. The farmhand testified that he knew defendant pointed the gun at him because he "was pretty much looking down the barrel." The farmhand also testified that defendant's actions in the field caused him no fear. Defendant, however, testified that he never pointed a gun at the farmhand, explaining, "I don't aim weapons unless I intend to kill."

¶ 6. After the close of the State's case, defendant moved to dismiss the aggravated assault charge. Defendant argued that there was no evidence that he had the requisite specific intent to

threaten necessary to sustain a conviction. The court denied defendant's motion, ruling that defendant's act of pointing the gun at the farmhand constituted a threat that defendant emphasized when he turned and fired the gun into the woods.

¶ 7. In its instructions, the court told the jury that for aggravated assault, the defendant must have communicated an intent to harm such that a reasonable person would understand it to be a threat. Defendant did not object to the instruction. The jury returned a verdict of guilty for aggravated assault, reckless endangerment, and disorderly conduct.* The court imposed a sentence of two-to-five years on the assault count, six-to-twelve months consecutive on the reckless endangerment count, and fifty-nine-to-sixty days for disorderly conduct. This appeal followed.

¶ 8. Defendant contends that the trial court's denial of his motion for acquittal was error, that its specific-intent instruction for aggravated assault was error, and that the convictions and sentences for both aggravated assault and reckless endangerment, on the facts of this case, violated his right against double jeopardy. The State responds that the trial court correctly denied defendant's motion for acquittal and that the court's jury instructions do not warrant reversal. The State concedes that the dual conviction and sentence for aggravated assault and the lesser included offense of reckless endangerment cannot be sustained, and urges this Court to vacate the lesser reckless endangerment conviction. We agree with the State on each of the three points. Accordingly, we affirm defendant's aggravated assault conviction and remand the case for the State to move to vacate one of the convictions.

I.

¶ 9. ■ Defendant first argues that the State did not present evidence that defendant's behavior satisfied the subjective-intent element required for aggravated assault. Review of a denial of a motion for judgment of acquittal evaluates "whether the evidence, when viewed in the light most favorable to the State and excluding any modifying evidence, fairly and reasonably tends to convince a reasonable trier of fact that the defendant is guilty beyond a reasonable doubt." *State v. Ellis*, 2009 VT 74, ¶ 21, 186 Vt. 232, 979 A.2d 1023 (quotation omitted). Granting a motion for

---

* Defendant does not challenge his disorderly conduct conviction on appeal.

judgment of acquittal is appropriate "only if the State has failed to put forth any evidence to substantiate a jury verdict." *Id.* (quotation omitted).

¶ 10. ■ Aggravated assault with a deadly weapon requires the State to prove that defendant "[was] armed with a deadly weapon and threaten[ed] to use the deadly weapon on another person." 13 V.S.A. § 1024(a)(5). Moreover, because aggravated assault is a specific-intent crime, the State must show that defendant subjectively intended to threaten the individual with the deadly weapon. *State v. Bourn*, 2012 VT 71, ¶ 17, 192 Vt. 270, 58 A.3d 236. Defendant posits the State could not prove the requisite specific intent to threaten for an aggravated assault because he intended only to attract publicity for his environmental cause.

¶ 11. ■ ■ This argument, however, conflates the concepts of motive and intent. Motive is what causes an individual to act or fail to act. See *State v. Johnson*, 371 S.E.2d 340, 348 (W. Va. 1988) (defining motive as "supplying the reason that nudges the will and prods the mind to indulge the criminal intent." (quotation and alteration omitted)). Whereas specific intent is an element of aggravated assault, *Bourn*, 2012 VT 71, ¶ 11, motive is not, and a "good motive is not a defense to criminal activity." *United States v. Martin*, 740 F.2d 1352, 1360 (6th Cir. 1984). Defendant's motive to publicize his cause, which both he and the State were free to present as evidence, is not inconsistent with, and does not negate, an *intent* to threaten the farmhand with a .45 pistol to achieve that end.

¶ 12. ■ Defendant's contention that the State's evidence fell short of prima facie evidence of defendant's subjective intent to threaten the farmhand is unavailing. Indeed, the evidence shows that defendant armed himself with a .45 pistol, stood twenty-five yards away from and pointed his gun at the farmhand, and then fired the pistol into the woods for emphasis. Assuming defendant could have intended otherwise, at the same time it cannot be said that pointing a firearm at another and demonstrating its capability to injure in the manner for which it is ordinarily designed is not prima facie evidence of a threat. That defendant first denied his conduct is also evidence of guilty intent. Cf. *State v. Kasper*, 137 Vt. 184, 195, 404 A.2d 85, 92 (1979) (reiterating established law of this jurisdiction that knowing falsification by defendant, as in claiming false alibi, "is admissible for the purpose of showing a

consciousness of guilt"). Taken as a whole and viewed in the light most favorable to the State, this evidence was sufficient to show beyond a reasonable doubt that defendant had the specific intent to threaten, even if his communication thereof was implicit, not explicit. Because "[i]t cannot be said that the State here failed to put forth *any* evidence to substantiate [the] jury verdict," the trial court correctly denied defendant's motion for judgment of acquittal. *State v. Russell*, 2011 VT 36, ¶ 13, 189 Vt. 632, 22 A.3d 455 (mem.) (quotation omitted).

## II.

¶ 13. Defendant next challenges the trial court's jury instructions. The court instructed the jury as follows:

> To threaten another person means to communicate by words or deed, an intent to inflict harm upon that person. The threat may be explicit. For example, it may be a direct verbal threat. The threat may also be implicit, consisting of words or conduct which a reasonable person would understand to be a threat. Whether the threat was explicit or implicit, or both, the State must have proven that [defendant] communicated an intent to inflict harm upon [the farmhand].

Defendant asserts that the instructions created an objective standard which avoided the specific-intent requirement of aggravated assault and undermined defendant's primary defense that he intended only to attract publicity to his cause. Defendant further posits that the trial court omitted the element of specific intent altogether by stating that a threat may consist "of words or conduct which a reasonable person would understand to be a threat."

¶ 14. ■ ■ Defendant did not object to the court's jury instructions at trial, and thus review on appeal is limited to plain error. See V.R.Cr.P. 52(b); *State v. Myers*, 2011 VT 43, ¶ 17, 190 Vt. 29, 26 A.3d 9 (party must object to jury instructions at trial to preserve issue for appellate review); *State v. Viens*, 2009 VT 64, ¶ 22, 186 Vt. 138, 978 A.2d 37; *In re Carter*, 2004 VT 21, ¶ 21, 176 Vt. 322, 848 A.2d 281 ("Since petitioner failed to object to the jury instructions, he must show plain error."). Plain error review of jury instructions assesses the instructions as a whole "to deter-

mine if they breathe the true spirit of the law, and if there is no fair ground to say that the jury has been misled." *State v. Rounds*, 2011 VT 39, ¶ 22, 189 Vt. 447, 22 A.3d 477 (quotation omitted).

¶ 15. ■ Plain error is "a very high bar." *State v. Herrick*, 2011 VT 94, ¶ 18, 190 Vt. 292, 30 A.3d 1285. Plain error analysis evaluates four factors: "(1) there must be an error; (2) the error must be obvious; (3) the error must affect substantial rights and result in prejudice to the defendant; and (4) we must correct the error if it seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Id.* Plain error arises only "in exceptional circumstances where a failure to recognize error would result in a miscarriage of justice, or where there is glaring error so grave and serious that it strikes at the very heart of the defendant's constitutional rights." *State v. Bain*, 2009 VT 34, ¶ 18, 185 Vt. 541, 975 A.2d 628 (quotation omitted).

¶ 16. ■ It is settled that aggravated assault is a specific-intent crime. See *Bourn*, 2012 VT 71, ¶ 11. Defendant correctly points out that the instruction did not include the exact reference to specific "subjective" intent prescribed in *Bourn. Id.* ¶ 17 (holding that conviction for aggravated assault requires actor to "subjectively intend to threaten"). However, taking the jury instructions as a whole in the context of this particular case, there is no plain error.

¶ 17. The instruction properly describes a threat actionable as aggravated assault by explaining that to "threaten another person means to communicate by words or by deed, an intent to inflict harm upon that person." See *State v. Cole*, 150 Vt. 453, 456, 554 A.2d 253, 255 (1988) ("A threat is a communicated intent to inflict harm on person or property."). While not as explicit as calling for "subjective" intent as prescribed in *Bourn*, the instructions still made clear that there could be no conviction without proof that defendant's message was to threaten injury to another, and that it was the State's burden to prove defendant communicated an intent to injure. The jury did not have to find that defendant actually intended to harm the farmhand, but only that he intended to threaten him. Cf. *Virginia v. Black*, 538 U.S. 343, 359-60 (2003) (" 'True threats' encompass those statements where the speaker means to communicate a serious expression of an intent to commit an act of unlawful violence to a particular individual or group of

individuals. The speaker need not actually intend to carry out the threat." (citations omitted)). So long as the jury was explicitly required to find a distinct communication of an intent to harm, the instruction is nearly indistinguishable from one requiring the jury to find a subjective intent to threaten within such a communication. Terms used by the trial court like "communicate[ ] an intent to harm" and "threaten" also fairly convey elements of a choice to act combined with intentionality. See *Cole*, 150 Vt. at 456, 554 A.2d at 255 (observing that "the word 'threaten' includes some element of volition" and that threatening behavior "communicates the requisite intent").

¶ 18. Moreover, the court's instruction that a threat may consist "of words or conduct which a reasonable person would understand to be a threat" did not transform the instruction into one of general intent. The instruction is not considered in a vacuum. The effect of the instruction was at least twofold: First, the instruction differentiated between explicit threats, communicated verbally, and implicit threats, conveyed through conduct. Second, the instruction's mandate correctly directed the jury to measure the effect of defendant's communication according to the perception of a reasonable person, rather than the subjective fearlessness of the farmhand.

¶ 19. Defendant posits, however, that in the case of an implicit threat, the instruction wrongly suggests that the necessary mens rea can be arrived at by the objective perception of a reasonable observer rather than determining defendant's actual subjective intent. This argument is correct, but the alleged prejudice would be persuasive in a more nuanced factual situation. Here, the message in defendant's pointing his pistol at the farmhand and contemporaneously demonstrating its lethality was barely, if at all, implicit. The apparent lack of ambiguity in the behavior proven, coupled with the defense focus on motive over intent, left the instruction's error less than critical.

¶ 20. Nor did the instruction's infirmity compromise the defense or lend doubt to the reliability of the verdict. Defendant argues that the instructions were prejudicial and impacted the fairness, integrity, and public reputation of judicial proceedings because it frustrated his defense that the State failed to prove his intent at the time of the incident. In this regard, defendant reiterates on appeal that he intended only to attract media and law enforcement's attention so as to generate publicity to his environmental

cause. That defendant continues to conflate or confuse the State's obligation to prove intent with a purported, but unnecessary, burden to overcome defendant's evidence of benign motive does not mean the instruction ruined his defense.

¶ 21. Defendant's motive defense was meritless as a matter of law, and warranted no jury instruction to support it. The defense may have offered an excuse, but did not refute the charge or the State's evidence. Short of legal necessity, a theory not advanced here, a good motive cannot ordinarily justify or excuse a specifically intended criminal act. *Martin*, 740 F.2d at 1360. Therefore, whatever its flaw, the jury instruction was marginally relevant to the defense, and did not adversely affect the fairness, integrity, or reputation of the trial process. Because the "charge as a whole is not misleading" and no prejudice to the defendant resulted in a "miscarriage of justice," the jury instructions do not rise to the level of plain error. *Herrick*, 2011 VT 94, ¶ 18; see *State v. Vuley*, 2013 VT 9, ¶ 1, 193 Vt. 622, 70 A.3d 940 (assuming "we cannot approve the trial court's instruction. . . . we affirm because the error does not rise to the level of plain error").

### III.

¶ 22. Given that the greater aggravated assault offense is upheld, and the State's concession that the felony convictions are mutually exclusive in this case, we need not address defendant's third argument. On remand, the State must move to vacate one of the convictions at its election.

*Affirmed on the aggravated assault conviction and remanded for vacatur on either the reckless endangerment conviction or the aggravated assault conviction.*