*99 Skoglund, J.
¶ 1. This appeal raises a narrow, but novel, issue: whether offenders previously convicted of home improvement fraud can be found guilty under the same statute if they subsequently perform home improvement activities but claim lack of knowledge of the statutory obligation to notify the Attorney General and file a surety. Defendant argued that the statute’s notice and surety section necessarily includes a scienter element. The State asserted that the section should be read without a fault element. The trial court held that the notice and surety section delineates a strict liability offense. We affirm.
¶ 2. On October 12, 2005, defendant pled guilty to one count of home improvement fraud in violation of 13 V.S.A. § 2029(b)(1). The plea agreement imposed a four to twelve month sentence, all suspended but for ten days on the work crew, and required defendant to perform restitution, to pay a fine, and to be on probation. Apparently, defendant was aware that he was to be placed on the home improvement fraud registry as a result of his conviction. Defendant satisfactorily completed the sentence imposed and had no contact with law enforcement until the circumstances underlying this appeal.
¶ 3. In 2014, a report was made to the Colchester Police Department that defendant was performing home improvement work without the proper notice to the Attorney General and without filing the necessary surety bond or letter of credit. At that time, defendant sought legal advice and claims that only then did he learn that he was obligated, pursuant to 13 V.S.A. § 2029(f)(2), to notify the Attorney General and post a bond or letter of security. The police conducted an investigation and concluded that the improper home improvement activities occurred at three separate locations during October 2012, June 2013, and July 2013. In November 2014, the State charged defendant with three counts of violating the notice and surety requirements of § 2029(f)(2).
¶ 4. Under § 2029(f)(2),[1] a person previously convicted of home improvement fraud “may engage in home improvement activities for compensation” only if:
*100 [T]he person notifies the Office of Attorney General of the intent to engage in home improvement activities, and ... the person has filed a surety bond or an irrevocable letter of credit with the Office in an amount of not less than $50,000.00, and pays on a regular basis all fees associated with maintaining such bond or letter of credit.
Id. Further, § 2029(e)(5) provides that a person who violates § 2029(f)(2) “shall be imprisoned for not more than two years or fined not more than $1,000.00, or both.” Id. § 2029(e)(5).
¶ 5. Defendant moved to dismiss the counts pursuant to Vermont Rule of Criminal Procedure 12(d) because the charging information did not allege that he knew about the requirements of § 2029(f)(2). The State opposed the motion, asserting that § 2029(f)(2) should be read without a fault element. On April 24, 2015, the trial court issued a written order denying defendant’s motion and holding that § 2029(f), in combination with § 2029(e)(5), does not contain a scienter element.
¶ 6. To reach its conclusion, the trial court focused on the five factors this Court described in State v. Roy, 151 Vt. 17, 25, 557 A.2d 884, 889 (1989), partially overruled on other grounds by State v. Brillon, 2008 VT 35, 183 Vt. 475, 955 A.2d 1108. The trial court noted that the first factor — the severity of the punishment — favored strict liability because violating § 2029(f) is a misdemeanor without a significant incarceration period. Similarly, the second factor — the potential harm to the public — supported a finding of no mens rea because the statute protects the public from contractors previously determined to be untrustworthy. The trial court next found that contractors as a group should be expected to know the statutory and regulatory requirements that govern their trade; therefore, the third factor — knowledge of the relevant information — suggested that § 2029(f) did not contain a scienter element. The fourth factor — the difficulty of prosecution if proof of intent is required — likewise reinforced the trial court’s determination because proving defendant’s subjective knowledge of the law would be virtually impossible. Finally, the trial court found that the last factor — the number of prosecutions expected — weighed slightly in favor of strict liability because prosecutions under § 2029(f) are rare. Because the factors taken together weighed strongly in favor of strict liability, the *101 trial court held that a scienter element should not be implied in the statute.
¶ 7. After the trial court’s written decision issued, defendant entered a conditional plea to two of the charges, reserving the right to appeal the question of whether the statute contains a scienter element. This appeal followed.
¶ 8. It is undisputed that defendant did not properly notify the Attorney General or file a surety bond or an irrevocable letter of credit. The only question on appeal is whether the statute required defendant to know about the notification and surety requirements imposed by § 2029(f)(2). We affirm and hold that § 2029(f) is a strict liability offense.
¶ 9. Our review of a statute to determine whether an element of intent should be implied is a question of law, which we review de novo. State v. Pontbriand, 2005 VT 20, ¶ 12, 178 Vt. 120, 878 A.2d 227.
¶ 10. It should be noted that this Court does not assume that a statute without a mens rea requirement necessarily creates a strict liability offense. State v. Francis, 151 Vt. 296, 307, 561 A.2d 392, 398 (1989); see also Morissette v. United States, 342 U.S. 246, 263 (1952) (“[M]ere omission from [the statute] of any mention of intent will not be construed as eliminating that element from the crimes denounced.”). As a general rule, we interpret criminal statutes in the defendant’s favor, but we “must avoid interpretations which defeat the purpose of the statute.” Roy, 151 Vt. at 25, 557 A.2d at 889. Thus, in some cases we have discerned a mens rea element without an express writing in the statute. See, e.g., State v. Audette, 149 Vt. 218, 222, 543 A.2d 1315, 1317 (1988) (determining kidnapping contains mens rea element), partially overruled on other grounds by State v. Bourn, 2012 VT 71, 192 Vt. 270, 58 A.3d 236. But in other circumstances we have determined that statutes contain strict liability offenses without an element of fault. See, e.g., Roy, 151 Vt. at 27, 557 A.2d at 891 (finding attempt to elude police officer is strict liability offense).
¶ 11. To determine if a statute contains a scienter element, we first examine the plain language of the statute for keys to the Legislature’s intent. See, e.g., State v. Richland, 2015 VT 126, ¶¶ 7, 21, 200 Vt. 401, 132 A.3d 702 (finding mens rea in statute’s plain language and holding mens rea applies to successive elements in statute). We construe the language with the assumption *102 that “[w]here the Legislature includes particular language in one section of a statute but omits it in another section of the same act, it is generally presumed that the Legislature did so advisedly.” State v. Fontaine, 2014 VT 64, ¶ 10, 196 Vt. 579, 99 A.3d 1034 (quotation omitted). Here, a subsection of the same statute — § 2029(b)(1) — defines the mens rea of home improvement fraud as “knowingly.” Id. Given the inclusion of “knowingly” in § 2029(b)(1), it not only appears that the Legislature intended for § 2029(f) to be a strict liability offense, but also that the Legislature had ample opportunity to insert a scienter element if it so chose.
¶ 12. Next, we look to the common law because our assumption is that the Legislature enacted the statute with an understanding of historical legal concepts. State v. Stanislaw, 153 Vt. 517, 522, 573 A.2d 286, 289 (1990). If a crime originates in the common law, the presumption is that intent remains a necessary part of the offense, absent an express contradiction from the Legislature. Id. at 522-23, 573 A.2d at 290. In this case, however, the law prohibiting home improvement fraud is entirely a creature of statute. See 2003, No. 51, § 1. As a result, no common law presumption in favor of imputing a scienter element exists.
¶ 13. Without this common law presumption, our precedent next directs us to examine the factors set forth in Roy. See, e.g., State v. Searles, 159 Vt. 525, 527-29, 621 A.2d 1281, 1283 (1993) (applying Roy factors to sexual assault of person under sixteen). In Roy, the defendant was convicted of attempting to elude a police officer. On appeal, he argued that a scienter element should be implied in the statute and that “[he] must have known that he was being signalled to stop by an enforcement officer.” Roy, 151 Vt. at 25, 557 A.2d at 889. We rejected this argument. Id. at 27, 557 A.2d at 891. To come to our conclusion, we examined the statutory language and five additional factors: “The severity of the punishment; the seriousness of the harm to the public; the defendant’s opportunity to ascertain the true facts; the difficulty of prosecution if intent is required; and the number of prosecutions expected.” Id. at 25, 557 A.2d at 889-90; see also 1 W. LaFave, Substantive Criminal Law § 5.5(a), at 383-86 (2d ed. 2003). We found that the five factors did not “undercut the conclusion drawn from the statutory language.” Roy, 151 Vt. at 26, 557 A.2d at 890.
*103 ¶ 14. In this case, the five factors outlined in Roy support the conclusion that the Legislature intended for § 2029(f) to be a strict liability crime. Of the five factors, the most important is the first — the severity of the punishment. Stanislaw, 153 Vt. at 523, 573 A.2d at 290. In Roy, we noted that attempting to elude a police officer was a misdemeanor, which supported the conclusion that the statute had no fault element. Roy, 151 Vt. at 26, 557 A.2d at 890. Here, because the maximum term of imprisonment is two or less years, a violation of § 2029(f) is a misdemeanor. See § 2029(e)(5) (stating maximum penalty is two or less years of imprisonment); 13 V.S.A. § 1 (defining “felony” as any offense “whose maximum term of imprisonment is more than two years”). Although misdemeanor offenses are not per se strict liability offenses, it is generally true that lighter punishments suggest that the Legislature intended the crime to be a strict liability offense. See Audette, 149 Vt. at 222, 543 A.2d at 1317; 1 LaFave, supra, § 5.5(a), at 383-84.
¶ 15. We are not persuaded by defendant’s argument that the cumulative effect of each violation of § 2029(e)(5) could result in severe punishment. First, we do not measure the severity of the punishment based on multiple violations of the same statute; rather, the factor focuses on the punishment the Legislature imposed for a single violation of § 2029(f). Second, we have previously held that a crime with a maximum term of twenty years was a strict liability offense. Searles, 159 Vt. at 528-29, 621 A.2d at 1283. In this case, even if defendant was sentenced to serve consecutive terms for his three violations of § 2029(f), it would result in a total of six years of incarceration. Given the comparatively light sentence imposed by § 2029(e)(5), the first factor strongly supports the conclusion that § 2029(f) is a strict liability offense.
¶ 16. Likewise, Roy’s second factor suggests § 2029(f) does not contain a fault element. The second factor focuses on protecting the public from serious harm based on the assumption that, if the potential harm to the public is highly likely or particularly grave, it is more probable that the Legislature intended the statute to lack a scienter element. Searles, 159 Vt. at 528, 621 A.2d at 1283. While looking at the seriousness of the harm, we must take great care “to avoid interpreting statutes as eliminating mens rea where doing so criminalizes a broad range of . . . *104 innocent conduct.” In re Welfare of C.R.M., 611 N.W.2d 802, 809, 810 (Minn. 2000) (holding possession of dangerous weapons on school yard is not strict liability crime because knives are common items). Section 2029(f) does not criminalize a broad range of activity. Rather, it imposes an obligation on a narrow group of people previously convicted of home improvement fraud and ensures that such offenders complete any home improvement activities they undertake. This prophylactic purpose supports strict liability.
¶ 17. Roy’s third factor — defendant’s opportunity to establish the true facts — does not weigh significantly in favor of strict liability. In Roy, the statute required that “the officer wear the appropriate insignia and the law enforcement vehicle sound a siren and have a flashing signal lamp” — elements that made it extremely easy for a person to ascertain that the police were signaling him or her to stop. Roy, 151 Vt. at 26, 557 A.2d at 890; cf. 1 LaFave, supra, § 5.5(a), at 385 (“The harder to find out the truth, the more likely the legislature meant to require fault in not knowing”). Here, defendant is a contractor who should have some knowledge of the rules and regulations governing his trade. Indeed, some courts have noted that, if a statute is aimed at a specific industry, members of that industry may be expected to be aware of the relevant statutes. See, e.g., Rivera v. State, 363 S.W.3d 660, 670 (Tex. App. 2011) (finding factor weighed in favor of strict liability because ordinance directed at entertainers, not ordinary citizens). Moreover, defendant knew that he would be placed on a home improvement fraud registry, a fact that could have alerted him to the possibility of other collateral consequences. On the other hand, as defendant argues, § 2029(f) is a collateral consequence imposed by the criminal code, not the type of municipal code or regulation that generally governs home improvement contractors. See, e.g., 24 V.S.A. § 8101(a) (establishing authority for cities, towns, and villages to establish codes and regulations governing construction). More important, unlike the statute in Roy, § 2029(f) does not contain facts that would make a violation of the statute obvious, which tempers the argument that the statute is a strict liability offense.
¶ 18. But Roy’s fourth factor offers considerable support that § 2029(f) does not contain a scienter element — that is, if § 2029(f) required a fault element, it would be nearly impossible to prosecute. Indeed, absent an admission from the defendant, it is *105 difficult to see what evidence could establish a defendant’s subjective knowledge of the surety requirement. See Roy, 151 Vt. at 26, 557 A.2d at 890 (“[IJntent would be hard to prove in the individual case because of the subjective nature of the element.”). Defendant argues that prosecutors must prove a scienter element to implement the legislative scheme, but we fail to see how this argument affects the efficacy of prosecutions. Because we assume that the Legislature intended for § 2029(f) to be effectively enforced, the fourth factor strongly suggests that we should not impute a fault element into § 2029.
¶ 19. Finally, the fifth factor cuts against strict liability. The principle underlying this factor is that the “fewer the expected prosecutions, the more likely the legislature meant to require the prosecuting officials to go into the issue of fault.” 1 LaFave, supra, § 5.5(a), at 386. Although our case law does not delve into this factor in great detail, we agree with defendant that prosecutions under § 2029 are rare and prosecutions under § 2029(f) are even more rare.
¶ 20. Ultimately, although Roy’s third and fifth factors tend to weigh against strict liability, the other three factors predominately favor a conclusion that the Legislature intended for § 2029(f) to lack a fault element. Moreover, the absence of a common law presumption against strict liability and the statutory language — particularly the Legislature’s inclusion of “knowingly” in § 2029(b)(1) — support this conclusion. We hold that § 2029(f) is a strict liability offense.

Affirmed.

 In 2015, the Legislature deleted § 2029(c) and redesignated subsections (d) through (g) as (c) through (f). 2015, No. 13, § 1. Defendant was charged with violating § 2029(f) prior to the statute’s redesignation; as a result, this opinion uses the pre-amendment citations.