NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vermont.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2016 VT 69

Nos. 2015-280 & 2015-281

| | |
|---|---|
| Citibank (South Dakota), N.A. | Supreme Court |
| | |
| | On Appeal from |
| v. | Superior Court, Washington Unit, |
| | Civil Division |
| | |
| Department of Taxes | March Term, 2016 |
| | |
| Sears, Roebuck & Co. | |
| | |
| v. | |
| | |
| Department of Taxes | |

Mary Miles Teachout, J.

Joslyn L. Wilschek of Primmer Piper Eggleston & Cramer PC, Montpelier, and
  Michael J. Bowen of Akerman LLP, Jacksonville, Florida, for Plaintiffs-Appellants.

William H. Sorrell, Attorney General, Will S. Baker and Mary L. Bachman, Assistant Attorneys
  General, Montpelier, for Defendant-Appellee.


PRESENT: Dooley, Skoglund, Robinson and Eaton, JJ., and Kupersmith, Supr. J. (Ret.),
          Specially Assigned


¶ 1. **DOOLEY, J.** Citibank (South Dakota), N.A., ( "lender") and Sears, Roebuck and Co. ("retailer") (collectively "plaintiffs") appeal from a superior court decision[1] affirming the determination of the Vermont Department of Taxes ("Department") that the parties, who had partnered to operate a private label credit card program through retailers' stores, were not

---

[1] Although these cases were brought separately, they were jointly decided by the superior court and have been consolidated here on appeal.

entitled to sales tax refunds related to bad debts. The Department denied lender's refund requests because it is not a registered vendor under Vermont law that remitted the sales tax it seeks to recover, and denied retailer's deductions because it did not incur the bad debt at issue. On appeal, plaintiffs argue that because they acted in combination to facilitate the sales giving rise to the bad debts, they are not barred from obtaining relief. We affirm.

¶ 2. The parties have stipulated the following facts. Lender entered into an agreement with retailer—among others—to provide retailer's customers with private label credit cards that would allow them to finance their purchases at retailer's stores. When a customer charged a purchase on a lender credit card, pursuant to their agreement, lender would pay retailer the amount charged; that is, the sale amount plus any applicable sales tax. As required by 32 V.S.A. §§ 9775-9776, retailer would report all taxable sales to the Department and remit all applicable sales tax.

¶ 3. During the period between June 1, 2004 and June 30, 2007 (the period), the dates at issue for both parties' requests for bad debt refunds, lender was not a vendor registered with the Department for sales tax purposes under 32 V.S.A. § 9707 and therefore was not permitted to collect and remit sales tax to the Department on sales of tangible personal property.

¶ 4. Several of retailer's Vermont customers made purchases using the credit card but defaulted and failed to pay lender. Lender determined that the unpaid balances of these accounts, which included money that had been applied to the sales taxes collected by retailer and then remitted to the Department, were uncollectable. Under its agreement with retailer, lender could not collect the unpaid amounts, including the sales tax amounts, from retailer. Lender charged off these accounts as uncollectable in its financial records and took bad debt deductions for these accounts on its federal corporate income tax returns during the period, pursuant to 26 U.S.C. § 166. Lender then filed seven claims with the Department for the period between

2

February 1, 2004 and June 30, 2007, requesting refunds of the sales tax paid on the bad debt accounts pursuant to 32 V.S.A. § 9780 in the amount of $866,364. The Department denied the requests.

¶ 5. Meanwhile, throughout the period, retailer took sales tax bad debt deductions on its monthly sales tax returns for sales that were fully taxable, but where the customer had not repaid the purchase price to lender. The Department audited retailer, disallowed the deductions, and assessed the company $350,215—not including penalties and interest—in improperly claimed bad debt deductions.

¶ 6. Retailer and lender appealed the Department's assessments and requested a hearing before the Commissioner of the Department pursuant to 32 V.S.A. § 9777(a). The Commissioner affirmed the respective refund request denial and tax assessment in written decisions. The Commissioner considered the "plain language" of 32 V.S.A. § 9780, which authorizes her to exclude from sales tax liability sales that have been cancelled or that result in bad debts:

> The Commissioner may provide by regulation for the exclusion from taxable receipts, amusement charges of amounts representing sales where the contract of the sale has been cancelled, the property returned on the receipt or charge has been ascertained to be uncollectable or, in the case the tax has been paid upon that receipt or charge, for refund or credit of the tax so paid.

Vt. Stat. Ann. tit. 32, § 9780. She noted that 10 060 033 Vermont Code Regulation § 1.9780 [hereinafter SUT Regulation][2] implements § 9780 and provides that:

> A. Where the seller or person required to collect tax is unable to collect accounts receivable in connection with which he or she has

_____

[2] Promulgated in 2007, this provision in part replaced Vermont Administrative Code Regulation § 226-13 [hereinafter Regulation § 226-13], which provided that "[w]here the vendor or person required to collect tax is unable to collect accounts receivable in connection with which he has already remitted the tax to the Commissioner, he may apply for a refund or credit within two years of the date the accounts were actually charged off on his books and records." Because of the timing of the period, both regulations apply.

3

already remitted the tax to the commissioner, that person or seller may apply to the commissioner for a refund or credit. Bad debt shall be defined as in Section 166 of the Internal Revenue Code. 26 U.S.C. § 166.

. . .

C. A claimant seeking recovery for bad debt shall deduct the debt on the return for the period during which the bad debt is written off as uncollectable in that claimant's books and records and is eligible to be deducted for federal income tax purposes.

D. If a claimant takes a deduction for bad debt, and the debt is subsequently collected in whole or in part, the tax on the amount so collected must be paid and reported on the return filed for the period in which the collection is made.

E. If the amount of bad debt exceeds the amount of taxable sales for the period during which the bad debt is written off, the claimant may file a refund claim with the commissioner in accordance with 32 V.S.A. § 5884.

The Commissioner noted that the meaning of both regulations was "plain . . . [t]he credit claimant must be the retailer or person 'required to collect the sales tax' and must also be the one who is 'unable to collect accounts receivable.' " These uncollectable receivables must be those in connection with which the claimant "already remitted the tax to the commissioner." Because retailer was required to collect sales tax, while lender suffered the losses from the failure of retailer's customers to pay lender, the Commissioner concluded that neither company was entitled to relief as neither met both requirements.

¶ 7. The parties' main argument to the Commissioner, to the superior court, and to this Court is that they satisfied § 9780 in combination, as together they formed an "economic unit." The obligation to pay sales taxes is imposed on a "person required to collect or pay tax." 32 V.S.A. § 9775(a). "Person" is defined by § 9701(1) to mean "an individual, partnership, society, association, joint stock corporation, public corporation or public authority estate, receiver . . . and any combination of the foregoing." Lender and Retailer argued that because they were acting in combination to the same end, their claims should be treated no differently than if Retailer alone

4

allowed customers to have credit accounts with their stores, charged purchases for later payment, and then sought a refund for unpaid accounts. However, the Commissioner found that the parties were not acting in concert insofar as their business dealings "did not make them a combined business 'person' required to collect sales tax." The Commissioner concluded that the regulations apply only to persons "required to collect the sales tax," who are statutorily identified as "vendor[s] of taxable tangible personal property or services." § 9701(9). The Commissioner noted that the parties' agreement recited that "it did not create 'and shall not be construed to create' a 'relationship of partners or joint venturers, fiduciaries or any association for profit between' " retailer and lender. She further noted that lender had "no obligation or authority to collect sales tax," so that if retailer had neglected to collect tax on a sale, lender had no duty to remit tax to the State and the State would have had "no legal basis on which to pursue [lender] for the unpaid tax." Similarly, she found that retailer had "no obligation to pay or repay to [lender] any of the funds [lender] had paid to [retailer];" if a cardholder failed to pay lender, lender could not obtain a remedy against retailer for that default. Thus, she ruled that lender and retailer could not be a "combination or unit for purposes of the bad debt sales tax refund law."

¶ 8.    The parties separately appealed to the superior court, which issued a single decision affirming the Department's determinations. The court concluded that the exclusion could not apply in these cases: there was "no meaningful way" to construe lender, who "merely provide[d] financing," as a vendor required to collect sales tax, while retailer, the vendor that did collect sales tax, was "fully paid for the sales that generate[d] losses for [lender]." This timely appeal followed.

¶ 9.    The parties have presented three issues for review: (1) whether lender and retailer acted in combination to meet the requirements of 32 V.S.A. § 9780 and the implementing

5

regulations, thereby entitling either or both[3] to a refund of sales tax paid by retailer on sales where the purchaser failed to pay lender and lender incurs a bad debt; (2) whether prohibiting lender and retailer from obtaining a refund of Vermont sales tax paid on bad debts violates the maximum sales tax rate imposed by Vermont law and; (3) whether good faith is a defense to penalties imposed on retailer under 32 V.S.A. § 3202(b)(3).

¶ 10.    We review the Commissioner's decision directly, "independent of the conclusion of the intermediate, on-the-record appeal of the superior court."  In re Williston Inn Grp., 2008 VT 47, ¶ 11, 183 Vt. 621, 949 A.2d 1073 (mem.).  Moreover, "out of respect for the 'expertise and informed judgment' of agencies, . . . and in recognition of our proper role in the separation of powers, . . . we apply a deferential standard of review to agency decisions."  Id. (citations omitted).  "Absent compelling indication of error," we uphold the Commissioner's interpretation of tax statutes and regulations.  Id. ¶ 12 (quoting Judicial Watch, Inc. v. State, 2005 VT 108, ¶ 10, 179 Vt. 214, 892 A.2d 191).

¶ 11.    We begin with plaintiffs' primary argument: that because § 9701 defines the term "person" for the purposes sales tax statutes and regulations to include a "corporation . . . and any combination of the foregoing," retailer and lender are entitled to relief for bad debts, as the "uncontroverted facts of this case" demonstrate that they "acted in combination" to facilitate sales.[4]

¶ 12.    The Commissioner concluded that even if the private label credit card program "increased business" for both retailer and lender, these business dealings "did not make them a combined business 'person' required to collect sales tax," as those words are used in Regulation

---

[3]  Both Lender and retailer have agreed to waive their individual rights to relief under § 9780 if this Court finds that the other is the proper party to claim the refund or deduction.

[4]  Retailer and lender essentially concede that each would not independently be entitled to relief under the statutory scheme.  As a result, we assume their individual ineligibility and focus on their argument that they have combined eligibility as a combination of persons.

1.9780. The agreement between the parties had nothing to do with the liability for and collection of sales tax; the arrangement did not impose a legal obligation upon lender to pay the tax and it did not make retailer financially responsible, in whole or in part, for the uncollectable accounts receivable.

¶ 13.  We find no compelling indication of error in the Commissioner's interpretation of the governing regulations and no error in the application of either regulation to the facts of this case.  The parties want the business and tax benefit of a combination with no combined responsibilities.  With respect to sales tax administration and liability, the situation is no different from one in which there is no agreement between the parties and the customer used a generally-available credit card.  As the Commissioner noted, the corporations were "clear in their contract agreement that they were not a business unit."  The agreement specifically stated that it did not create a relationship of partners, joint venturers, or fiduciaries; it provided that lender was the "sole and exclusive owner" of the card accounts and that lender alone "bore the loss for any in account" in which a purchaser defaulted on its obligations to lender.  It is an entirely reasonable interpretation of the bad debt regulations that this very limited "combination" of entities cannot qualify for a bad debt refund where neither of the entities in the combination can alone qualify.

¶ 14.  We particularly find plaintiffs' combination theory unpersuasive when we try to work it through the bad debt regulations.  Plaintiffs have focused on the appearance of the word "person" in these regulations as an alternative to "vendor" or "seller" to argue that a combination of entities can meet the requirements for a bad debt refund.  Plaintiffs have stressed that the presence of alternatives, including "person," in each iteration of the regulations is "an express acknowledgement that someone other than a registered vendor can claim relief from bad debts."  See Regulation § 226-13 (a "vendor or person required to collect tax [who] is unable to collect accounts receivable in connection with which he or she has already remitted the tax to the

7

commissioner" is eligible for a bad debt refund); SUT Regulation § 1.9780 (A) (noting "seller or person required to collect tax [who] is unable to collect accounts receivable in connection with which he or she has already remitted the tax to the commissioner" is eligible for a bad debt refund). That argument might be persuasive if the coverage of a combination of entities could be the only reason for the inclusion of the word "person."

¶ 15. However, the sales tax statutes include alternatives because they impose liability for the tax on persons other than vendors or sellers who are not combinations of entities. The main example is in the statute defining the phrase "person required to collect tax," the exact phrase used in the regulations. As 32 V.S.A. § 9701 (14) states:

> "Persons required to collect tax" or "persons required to collect any tax imposed by this chapter" means every vendor of taxable tangible personal property or services, every recipient of amusement charges. These terms shall also include any officer or employee of a corporation or other entity or of a dissolved entity who as that officer or employee is under a duty to act for the corporation or entity in complying with any requirement of this chapter.

Thus, for purposes of sales tax liability, a corporate vendor and officers or employees of a corporate vendor may each have liability for sales taxes. That concept is further developed in 32 V.S.A. § 9704, which adds "salespersons" and the like to those liable:

> When in the opinion of the Commissioner it is necessary for the efficient administration of this chapter to treat any salesman, representative, peddler or canvasser as the agent of the vendor, distributor, supervisor, or employer under whom he or she operates or from whom he or she obtains tangible personal property sold by him or her or for whom he or she solicits business, the Commissioner may, in his or her discretion, treat such agent as the vendor jointly and severally liable with the principal, distributor, supervisor, or employer for the collection and payment of the tax.

It is logical that the regulations would extend the bad debt exclusion to persons who are neither vendors nor sellers but are liable for paying sales taxes to the Department under §§ 9701(14) or 9704. It is far less persuasive that the regulations would extend bad debt review eligibility to a

8

lender who has no liability for the sales tax on the bad debt amount or to a retailer, who is a seller or vendor, but has never held the debt that has become uncollectible.

¶ 16. The Commissioner's conclusion is further supported by decisions from courts in other states. As the Commissioner noted, "the overwhelming majority of courts in similar cases involving similar statutes" have held that third-party bad debt does not entitle the retailer or creditor to reclaim sales tax. See J.A. Amdur, Annotation, Recovery of Sales Tax Paid On Bad Debts, 38 A.L.R. 6th 255, § 2 (2008) ("Most courts have concluded that a lender did not meet the statutory definition of an entity entitled in its own right to recover sales taxes under a state's bad debt statute, holding that the recovery right extended only to the entity that was liable for paying the tax."). Although the precise wording of the state statutes varies, a number of decisions involve similar facts and similar statutes. For example, in Home Depot USA, Inc. v. State, Department of Revenue, Home Depot entered into agreements with General Electric Capital Corporation (GECC) to have GECC issue credit cards to Home Depot customers for use only in Home Depot stores. 215 P.3d 222, 224 (Ct. App. Wash. 2009). In accordance with the agreements, Home Depot transmitted GECC card sales to GECC, who then paid Home Depot proceeds on the sales, "including any retail sales taxes." Id. (emphasis omitted). GECC took bad debt deductions under 28 U.S.C. § 166 for defaulted card accounts on its federal income tax returns. Id. Home Depot sought a refund for sales tax paid on these defaulted transactions under the former RCW 82.08.037, which provided that a "seller is entitled to a credit or refund for sales taxes previously paid on debts which are deductible as worthless for federal income tax purposes." Id. at n.1. The Department of Revenue denied the refund petition.

¶ 17. The Washington Court of Appeals affirmed. The court noted that the refund statute had three primary requirements: "(1) the seller must be a person, (2) making sales at retail, [who is] (3) entitled to a refund for sales taxes previously paid on deductible debts." Id. at

9

227 (quotation omitted). The court further observed that while the statute did not "explicitly contain a requirement that bad debts be deductible by the refund claimant, [an] analysis of related" tax laws from Alabama, Oklahoma, and Indiana demonstrated that the "party seeking the deduction must be the one holding the bad debt as well as the one to whom repayment on such a debt would be made." Id. at 228-229. To that end, because immediately after a sale, Home Depot submitted the charge to GECC and GECC reimbursed Home Depot for the purchase price and the sales tax payment, "Home Depot no longer held any 'debt'—either defined by state law . . . or by federal law . . . —directly attributable to its sales tax payments" to the Department and so was ineligible to claim a refund. Id. at 228 (citations omitted). The court also rejected Home Depot's argument that it and the financing companies "qualify as a single 'unit.'" Id. at 230. The court reasoned that rather than acting as "one another's agents" or "with any singularity of purpose," Home Depot and GECC were "two separate companies bound only by a negotiated contract" and so could not constitute a unitary business for tax purposes. Id.

¶ 18. Other courts have reached similar conclusions regarding the eligibility of either retailers or lenders in comparable credit arrangements to claim sales tax refunds for bad debts. See, e.g., DaimlerChrysler Servs, N. Am., LLC v. State Tax Assessor, 2003 ME 27, ¶¶ 10, 14, 817 A.2d 862 (holding that lender and assignee of retailer ineligible for refund of sales tax because lender not retailer making sales "required to collect taxes from sales and to report monthly on all sales made"); Circuit City Stores, Inc. v. Dir. of Revenue, 438 S.W.3d 397, 398, 401 (Mo. 2014) (en banc) (rejecting argument retailers can be treated as single organizational entity with banks where they did not form joint entity or association but merely "entered into contractual relationships to finance customer purchases" and concluding retailers not entitled to seek tax refund banks later wrote off where at time of initial transaction, "banks fully paid the retailers for both the amount of the sales tax and the amount of the purchase on which that tax

10

was based"); Gen. Elec. Capital Corp. v. N.Y. State Div. of Tax Appeals, 810 N.E.2d 864, 868 (N.Y. 2004) (observing that because "[t]hird-party finance companies do not carry the burden of collecting sales taxes as a trustee of the State," it was not arbitrary or capricious for Tax Commission to preclude third parties from pursuing refund claims pertaining to uncollectible debts); Home Depot USA, Inc. v. Levin, 2009-Ohio-1431, ¶¶ 16-17, 905 N.E. 2d 630 (determining that sales tax refund statute limits bad-debt deduction to vendor that writes off debt on own books and vendor here "deliberately decided against extending credit" to customers and so "no more bears the economic burden of customer default on a private-label credit card transaction than it does on an ordinary credit card deal"); but see Puget Sound Nat'l Bank v. Dept. of Revenue, 868 P.2d 127, 130 (Wash. 1994) (finding, where lender was assignee of installment sales contracts, that lender entitled to deductions based on "general assignment law").

¶ 19.  Indeed, when this lender and retailer have litigated this precise issue in other states, with statutes similar to ours, they have not prevailed.  See Citibank (South Dakota), N.A. v. Graham, 726 S.E.2d 617, 620 (Ga. Ct. App. 2012) (deciding that because Citibank "had no statutory obligation to pay, remit or prove payment of any tax" but was "simply a third-party lender," its recourse is against defaulting consumers, not state under general refund statute); Sears, Roebuck & Co. v. State Tax Assessor, 2012 ME 110, ¶¶ 11, 12, 52 A.3d 94 (concluding that plain and best reading of tax refund statute "does not allow, and has never allowed, two separate corporations to qualify as an 'other group or combination acting as a unit' " and stating Sears cannot claim bad debt sales tax credit "because a third-party creditor wrote off the debt and Sears was fully compensated for the purchase"); Sears, Roebuck & Co. v. Comm'r of Revenue, 989 N.E.2d 907, 909 (Mass. Ct. App. 2013) ("[a]n interpretation permitting reimbursement of sales tax to a vendor which has not extended credited to a purchaser and is not harmed by a purchaser's default against a third party creditor would not only absurdly result in a windfall for

the vendor, but would be an interpretation contrary to [the bad debt statute]"); Menard Inc. v. Dept. of Treasury, 838 N.W. 2d 736, 744, 745 (Mich. Ct. App. 2013) (rejecting argument that retailers and financing companies jointly constituted taxpayers for purposes of obtaining bad debt refund where retailers paid in full in accordance with reimbursement agreements by third party lenders); Citibank (South Dakota), N.A. v. Comm'r of Revenue, No. 8488-R, 2015 WL 3852970 at *3 (Minn. Tax Ct., June 4, 2015) (rejecting argument entities acted as unit for sales tax purposes when Citibank is not jointly liable with any retailer sales and use tax, or jointly required to withhold, collect, or remit sales and use tax, file joint tax returns with any retailer, obtain state sales tax permit or keep tax records with any retailer).

¶ 20.   In light of persuasive authority from other jurisdictions and our reading of the both sales tax bad debt regulations together with the governing statutes, we find no compelling indication of error in the Commissioner's interpretation of the regulations or their application in this case.  Thus, we affirm the Commissioner's conclusion that neither plaintiff is eligible for bad debt relief.

¶ 21.   Plaintiffs also argue that in cases where a purchaser defaults before repaying the purchase price, the state has collected sales tax on a sum greater than what the purchaser actually paid, thus "far exceeding the maximum sales tax rate of six percent."  Plaintiffs contend this violates the Vermont sales and use tax statute, 32 V.S.A. § 9771, as sales tax is intended to reflect "the price that the purchaser actually pays for the item," and the State is collecting sales tax on an unpaid purchase price.  We disagree.

¶ 22.   This is a question of statutory construction, and the short answer is that the statute gives the Commissioner discretion to recognize bad debts but does not require it.  Thus, the statute recognizes that the Commissioner could refuse to extend a bad debt credit or refund without violating the tax rate provision.

¶ 23. Even if the Commissioner were required to grant a bad debt exclusion or refund to eligible persons, we would reject the theory that failing to provide the lender an amount equal to the tax payment of the retailer on accounts in default violates the tax rate statute. Plaintiffs cite no authority for the proposition that the purpose of sales tax is to reflect the amount a purchaser actually transmits when buying goods. We have similarly found none. We can also see no logical reason the sales tax rate should be derived from the amount a purchaser ultimately repays a third party-lender—any third-party lender, as plaintiffs' argument is not limited to private label credit-card arrangements—rather than the amount paid to the retailer when the sale occurs. Sales tax is predicated on the relationship between retailer and purchaser—nothing in the statutory scheme shows an intent to condition taxation for retail goods on a purchaser's future repayment to a lender, a transaction that in no way involves a sale of retail goods. Cf. Bud Crossman Plumbing and Heating v. Comm. of Taxes, 142 Vt. 179, 186-87, 455 A.2d 799, 801 (1982) (noting that in Vermont, sales tax is "imposed on the purchaser of goods and services, not on the vendor;" vendor serves as "merely the collector of the tax on behalf of the state" as evidenced by statutory "responsibility to collect and pay over to the state the tax collected."). Under plaintiffs' theory, the State would be unable to definitively assess and collect tax on retail sales financed through third-parties until purchasers had met their debt obligations, which might occur months or years after the purchase had actually taken place—or, as is the case here, never occur at all. By engaging in the business of lending money on credit, third-party lenders have elected to bear the risk of non-repayment. It does not follow that by requiring tax to be paid on sales of retail goods, the state of Vermont should bear that same risk.

¶ 24. As with plaintiffs' first argument, this argument has been considered by other courts, which have rejected it essentially on the same rationale. See Citifinancial Retail Servs. Div. of Citicorp Trust Bank , F.S.B. v. Weiss, 271 S.W. 3d 494, 499-500 (Ark. 2008) ("Although

[the lender] paid the retailers (sellers) the full, outstanding price for the purchases, including the sales tax, [the lender] does not file returns to report and remit [state] sales taxes, and [the lender] is not the party ultimately responsible for the payment of the sales taxes that arise from the consumer purchases that they finance"); Graham, 726 S.E. 2d at 620 (noting that lender's recourse is "against the consumer who defaulted on the debt or possibly through any provisions in the Program contracts assigning responsibility for bad debts among the various parties," rather than under bad debt statute). We concur with the reasoning of the Arkansas and Georgia courts and conclude that the Department did not violate § 9771 by collecting sales tax on purchases the financing of which was ultimately defaulted on by lender's consumers.

¶ 25. Finally, retailer asserts that because it acted in good faith in claiming relief from bad debts, the imposition of penalties for a failure to timely pay all sales and use tax under 32 V.S.A. § 3202(b)(3) is inappropriate. Retailer claims "no authority or guidance existed" during or before the period that indicated it was impermissible to claim relief relating to bad debts in audits, especially as Vermont "has long-permitted taypayers to claim relief from bad debts." Additionally, retailer suggests that because §3202(b)(3) provides that the Commissioner "may" impose penalties, the statute "reflects an unambiguous recognition that penalties are assessed as warranted by each unique set of facts and circumstances" and that good faith was intended to be a "consideration" when assessing penalties.

¶ 26. We begin by noting that this Court has considered §3202 on only one occasion: TD Banknorth, N.A. v. Department of Taxes, 2008 VT 120, 185 Vt. 45, 967 A.2d 1148. In that case, a taxpayer—the parent company to three banks—appealed an assessment of bank franchise taxes, interest, and penalties. The Commissioner and superior court determined each bank had established holding companies to take advantage of favorable tax status; because the companies had "no economic substance or legitimate business purpose and were formed merely to evade the

14

[bank franchise tax]," the Department assessed a 25% penalty under § 3202(b)(4). Id. ¶ 7. The taxpayer argued that the Commissioner lacked the discretion to impose a penalty different from that assessed by the Department; violated the taxpayer's due process rights and; could not assess a penalty when underpayment results from an erroneous refund. Id. ¶ 34. We were unpersuaded by this reasoning, holding

> Pursuant to 32 V.S.A. § 3201(a)(5), the Commissioner has broad statutory authority to "waive, reduce or compromise any of the taxes, penalties, interest or other charges or fees within his or her jurisdiction." The plain meaning of this provision grants the Commissioner discretion to amend or impose a penalty.
>
> . . .
>
> Taxpayer would have us read §3202 to bar the assessment of a penalty when the underpayment of taxes is due to an erroneous refund sought by a taxpayer, rather than because of an initial failure to pay. This narrow reading of §3202 is defeated by both the language and purpose of the provision. The plain meaning of this provision authorizes the imposition of a penalty on a taxpayer who has not paid his or her "tax liability" in full, imposing no restrictions on the application of the penalty for particular types of tax avoidance or underpayment. Taxpayer's interpretation would restrict the Department from assessing penalties in cases where complications—such as erroneous tax refunds, or the filing of multiple returns, as here—result in underpayment. This crabbed reading would defeat the purpose of the provision, which is <u>to enable the Commissioner to penalize taxpayers when they have not properly discharged their tax burden</u>.

Id. ¶¶ 35, 37 (citations omitted) (emphasis added).

¶ 27. Here, retailer has acknowledged that the Commissioner has the discretionary authority to impose penalties. With our holding in the instant case, it is now undisputed that Retailer was not permitted to reduce its tax payment by the losses incurred by lender, as it was not entitled to any bad debt deduction or refund. Because penalties are authorized where a taxpayer has failed to pay any tax owed to the Department, the Commissioner acted well within

15

her discretion in imposing a 5% monthly penalty—significantly less than that upheld in <u>T.D. Banknorth</u>—on retailer.

¶ 28. Retailer has failed to show how that decision constituted an abuse of discretion. In support of its position, it argues that "no statute, no regulation, no Department rulings and no judicial decisions from the courts of Vermont" existed to define the boundaries for claiming bad debt refunds or credits. We reject this contention for two reasons. First, rather than suggesting underpayment was the fault of external complications, as in <u>T.D. Banknorth</u>, Retailer is essentially positing that it should not incur penalties because it was ignorant of the tax law, an untenable defense in any jurisdiction. <u>State v. Woods</u>, 107 Vt. 354, 356-57, 179 A. 1, 2 (1935) (affirming maxim that ignorance of law is no excuse is "of unquestioned application in Vermont . . . both in civil and in criminal cases."). Second, as the Commissioner noted, there was nothing precluding retailer from seeking a ruling from the Department as to the applicability of the bad debt statute. Indeed, as retailer was aware that bad debt relief was unavailable in, at least, Maine, Massachusetts, Georgia, and Minnesota, where it had previously litigated and lost on this very issue, it is difficult to perceive their claiming of the exclusion in Vermont as one in pure good faith. At the bare minimum, faced with contrary case law from other jurisdictions and a Vermont statute suggesting exclusions for the bad debts of another corporation were "unavailable or at least questionable," retailer elected not to consult the Department, but instead, "assumed the risk of taking the deduction". We do not believe these are circumstances warranting reversal of the Commissioner's decision.

<u>Affirmed</u>.

FOR THE COURT:

_____

Associate Justice

16