NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vermont.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2018 VT 36

No. 2017-150

| | |
|---|---|
| State of Vermont | Supreme Court |
| | |
| | On Appeal from |
| v. | Superior Court, Bennington Unit, |
| | Criminal Division |
| | |
| John J. Stern, Jr. | December Term, 2017 |

William D. Cohen, J.

Alexander Burke, Deputy State's Attorney, Bennington, for Plaintiff-Appellee.

Allison N. Fulcher of Martin & Associates, Barre, for Defendant-Appellant.

PRESENT: Reiber, C.J., Skoglund, Robinson, Eaton and Carroll, JJ.

¶ 1. **REIBER, C.J.** Defendant appeals the trial court's determination that he violated the terms of his probation by possessing a firearm in violation of 13 V.S.A. § 4017. We affirm.

¶ 2. Defendant pled guilty to domestic assault in November 2015. The trial court deferred his sentence for one year and placed him on probation. Defendant's deferred sentence and probation order stated, "You must not engage in criminal behavior[.]" After defendant's release on probation, he asked his probation officer whether he could possess a firearm. The probation officer informed him that he was not an attorney, but he thought defendant could. This was incorrect. Under Vermont law, it is illegal for anyone convicted of domestic assault to possess a firearm. See 13 V.S.A. § 4017(a), (d)(3) (prohibiting person convicted of violent crime from possessing firearm); id. § 5301(7)(C) (listing domestic assault as violent crime).

¶ 3.    During the fall of 2016, defendant encountered police officers three times.  Each time, he voluntarily informed the officers that he possessed a gun.  In November 2016, the State filed an affidavit alleging defendant had violated his probation by possessing a firearm on three occasions.  After a hearing in December 2016, the trial court determined that Condition 31 of the probation certificate, which prohibited "engag[ing] in criminal behavior," provided "fair notice" that firearm possession would violate 13 V.S.A. § 4017, a strict liability offense; that defendant was in possession of a firearm on three occasions; and that defendant, accordingly, violated the terms of his probation.  The court further held that the burden generally falls on defense counsel, not the probation officer, to inform defendant of potential "collateral consequences of a [criminal] conviction."  Defendant timely appealed.

¶ 4.    Defendant makes two arguments.  First, he argues that the probation officer's statements "eviscerate[d] the clarity" of the probation condition such that he cannot be held to have violated the terms of his probation.  Second, defendant argues that even if he did violate his probation, he did not do so willfully.  Defendant does not dispute the trial court's finding that he possessed a firearm in violation of 13 V.S.A. § 4017.

¶ 5.    A violation-of-probation decision "presents a mixed question of law and fact." State v. Sanville, 2011 VT 34, ¶ 7, 189 Vt. 626, 22 A.3d 450 (mem.).  On review, "[w]e will not disturb the court's findings if they are fairly and reasonably supported by credible evidence, and we will uphold the court's legal conclusions if reasonably supported by the findings." State v. Provost, 2014 VT 86A, ¶ 12, 199 Vt. 568, 133 A.3d 826 (quotation omitted).  Defendant's first argument disputes the trial court's legal conclusion by raising a question of law; we review that question of law de novo. State v. Bryan, 2016 VT 16, ¶ 12, 201 Vt. 298, 142 A.3d 204 (reviewing de novo legal question underlying court's conclusion in probation-revocation decision).  Defendant's second argument raises a question of fact, which we will uphold if "fairly and reasonably supported by credible evidence." State v. Decoteau, 2007 VT 94, ¶ 8, 182 Vt. 433, 940 A.2d 661; State v. Anderson, 2016 VT 40, ¶ 13, 202 Vt. 1, 146 A.3d 876 ("Whether a defendant's

2

probation violation was willful is a question of fact, and we will not disturb a trial court's determination that the defendant acted willfully unless that determination was clearly erroneous.").

¶ 6.    In order for the court to find a violation of probation, the State must show, by a preponderance of the evidence, that "there has been a violation of a probation condition whose requirements were known to the probationer." State v. Coyle, 2005 VT 58, ¶ 8, 178 Vt. 580, 878 A.2d 1062 (mem.) (emphasis added).  "[D]ue process requires that a convicted offender be given fair notice as to what acts may constitute a violation of his probation, thereby subjecting him to loss of liberty."  State v. Peck, 149 Vt. 617, 619, 547 A.2d 1329, 1331 (1988); see also State v. Bubar, 146 Vt. 398, 405, 505 A.2d 1197, 1201 (1985) ("[T]he defendant is entitled to know what conduct is forbidden before the initiation of a probation revocation proceeding.").  Therefore, a court can find a probationer in violation of probationary terms only when those terms are "express" or "so clearly implied that a probationer, in fairness, can be said to have notice of it."  State v. Austin, 165 Vt. 389, 389, 685 A.2d 1076, 1082 (1996) (quotation and alterations in original omitted).

¶ 7.    A probationer has fair notice of those conditions expressly stated in the probation certificate.  See 28 V.S.A. § 252(c) ("When an offender is placed on probation, he or she shall be given a certificate explicitly setting forth the conditions upon which he or she is being released."); State v. Kane, 2017 VT 36, ¶ 20, __ Vt. __, 169 A.3d 762 ("To satisfy this due process requirement [of fair notice], offenders must be 'given a certificate explicitly setting forth the conditions upon which he or she is being released.' " (quoting 28 V.S.A. § 252(c))).  The instructions and directions of the probation officer may also provide fair notice.  See State v. Blaise, 2012 VT 2, ¶ 15, 191 Vt. 564, 38 A.3d 1167 (mem.) ("[A] defendant might be given fair notice of what may constitute a probation violation by the instructions and directions given to defendant by his or her probation officer . . . ." (quotation omitted)).

¶ 8.    Defendant's probation certificate provided defendant fair notice that gun possession constituted a violation of his probationary terms, and he does not argue otherwise.  The

3

certificate expressly prohibited defendant from "engag[ing] in criminal behavior," and it is criminal behavior for someone convicted of domestic assault to possess a gun. 13 V.S.A. § 4017. Defendant agrees that the condition was clear: "Condition 31, 'You must not engage in criminal behavior,' is not vague on its face . . . ." Cf. Sanville, 2011 VT 34, ¶ 1 (finding defendant lacked fair notice because probation certificate was insufficiently clear regarding what constituted "threatening behavior"). Defendant also concedes that his gun possession was criminal behavior proscribed by the plain terms of the probation certificate. And he does not dispute the long-standing legal principle that "ignorance of the law is not an excuse," meaning, the law presumes all individuals know the law and are responsible for non-compliance. See State v. Fanger, 164 Vt. 48, 53, 665 A.2d 36, 38 (1995) (affirming legal principle that ignorance of law is not excuse); State v. Woods, 107 Vt. 354, 356-57, 179 A. 1, 2 (1935) (stating that "everyone is conclusively presumed to know the law").[1]

¶ 9.     What defendant disputes is how his probation officer affected that notice. Defendant argues that the officer's statements "eviscerate[d] the clarity in the condition" such that defendant no longer had fair notice of what was required of him. We have established that the directions and instructions of probation officers may serve as fair notice to the probationer. See State v. Hammond, 172 Vt. 601, 602, 779 A.2d 73, 75 (2001) (mem.) (stating that "a defendant may be put on notice as to what may constitute a probation violation merely by the instructions and directions of a probation officer"); State v. Gleason, 154 Vt. 205, 216, 576 A.2d 1246, 1252 (1990) ("The instructions and directions given to a defendant by a probation officer or the court can also serve to provide fair notice.").

---

[1] Ignorance of the law may be a defense when knowledge is an element of the crime, which is not the case here. 13 V.S.A. § 4017 (proscribing gun possession without any intent requirement); State v. Witham, 2016 VT 51, ¶ 29, 202 Vt. 97, 147 A.3d 1005 (Robinson, J., concurring) (stating that "ignorance that the law proscribes particular conduct may be a defense if knowledge of the law is an element of the offense in question" (emphasis in original)); Fanger, 164 Vt. at 53, 665 A.2d at 39 (considering knowledge of law in analysis of "subjective intent" under criminal statute).

4

¶ 10. We have not yet considered whether a probation officer's statements may remove fair notice already provided through the certificate.[2] We decline to establish whether, as a matter of law, some circumstances exist in which a probation officer's statements may vitiate fair notice because, in this case, we determine that the probation officer's statements were not sufficiently clear and unambiguous as to remove the express notice provided by the probation certificate. Instead, the probation officer's statements were equivocal. At the violation-of-probation hearing, defendant's probation officer testified:

> [Answer]: He had asked me if he could ever use a firearm, and I looked over his charges that he has in our system and asked him if he had any other felonies or anything anywhere else. He said no, and I said, I don't see why you can't. I wasn't aware of the domestic assault.
>
> [Question]: Did you specifically say he could have firearms?
>
> [Answer]: No. I said I don't believe he can't. My opinion—
>
> [Question]: Okay.
>
> [Answer]: —is that he can't.
>
> [Question]: Did you qualify—did you specifically advise whether it was legal for him to possess any firearms with this domestic assault conviction?
>
> [Answer]: No. I told him that, [in] my opinion, you could; but I'm—I'm not an attorney.

Thus, defendant's probation officer made clear that although, in his opinion, defendant could possess a firearm, he was not certain whether firearm possession constituted criminal behavior in defendant's circumstances.

---

[2] We agree with the trial court's observation that "probationers primarily rely on their probation officers for the nuances of their conditions." We also agree, however, that "it is not for the court to weigh the equities of particular circumstances in deciding" a probation violation. Rather, that weighing lies within the State's prosecutorial discretion in deciding whether to pursue a probation violation. See State v. Rooney, 2011 VT 14, ¶ 30, 189 Vt. 306, 19 A.3d 92 (acknowledging that "[v]irtually unlimited prosecutorial discretion in charging decisions is no stranger to our law"); State v. Angelucci, 137 Vt. 272, 283, 405 A.2d 33, 39 (1979) (cautioning against judicial "intrusion" into "executive operations" when reviewing prosecutorial decisions).

¶ 11. The probation officer's equivocation should have put defendant on notice that he must make further inquiries to ensure he understood the terms of his probation. Defendant acknowledged that he received and understood the conditions of his probation, and he is presumed to know the law—including what conduct qualifies as "engag[ing] in criminal behavior." See Woods, 107 Vt. at 356-57, 179 A. at 2 ("The maxim, 'Ignorantia legis non excusat,' and the corresponding presumption that every one is conclusively presumed to know the law, are of unquestioned application in Vermont as elsewhere, both in civil and in criminal cases."); cf. Citibank v. Dep't of Taxes, 2016 VT 69, ¶ 28, 202 Vt. 296, 149 A.3d 149 (stating that plaintiff "is essentially positing that it should not incur penalties because it was ignorant of the tax law, an untenable defense in any jurisdiction" (citing Woods, 107 Vt. at 356-57, 179 A. at 2)). If the probation officer had definitively informed defendant that he could possess a firearm, then this might be a different case. Likewise, if the probation certificate had not already provided fair notice, we might give the probation officer's instructions different effect. But under these circumstances, we cannot say that the probation officer's equivocal statement of his opinion was sufficient to "eviscerate" the fair notice provided by the express terms of the probation certificate. Accordingly, we find the court did not err in concluding that defendant violated his probation by possessing a firearm in violation of 13 V.S.A. § 4017.

¶ 12. Because the State met its burden to show a violation, the burden of proof shifts to defendant to show his conduct was not "willful" but "resulted from factors beyond his control and through no fault of his own." Coyle, 2005 VT 58, ¶ 8. A probationer's conduct is not willful if it resulted from "accident, mistake, or inadvertence," rather than "intentional conduct." Anderson, 2016 VT 40, ¶ 13 (quotation omitted). In other words, defendant has the burden to show that the actions underlying the violation were unintentional. See Benson v. Muscari, 172 Vt. 1, 4, 769 A.2d 1291, 1295 (2001) (concluding that defendant's conduct in violating relief-from-abuse order was willful if "defendant intended to do the act that constituted the violation" and "the violation could not result from a mistake, an accident, or a misunderstanding"). Defendant could not meet

6

that burden here. While he may not have intended to violate his probation, he intentionally possessed a firearm. We cannot find that the trial court committed error in finding defendant's conduct willful, and we will not disturb its finding.

¶ 13. The dissent presents the case for adopting a doctrine called "entrapment by estoppel" or "due process reliance," an exception to the general rule that ignorance of the law is no excuse. See post, ¶ 7. We have not adopted this doctrine or its variations in past cases. We decline to do so now. Neither of the parties raised or briefed this issue, which makes us wary to adopt it here. See State v. Settle, 141 Vt. 58, 61, 442 A.2d 1314, 1315 (1982) ("[I]n all but a few exceptional instances, matters which are not briefed will not be considered on appeal."). Our reserve is heightened by the fact that its scope and application are by no means settled law, nor has its adoption in state courts been universal. See, e.g., State v. Planck, 856 N.W.2d 112, 117-18 (Neb. 2014) (stating Nebraska had not adopted "entrapment by estoppel" defense until 2013 and summarizing different courts' varied treatment of entrapment-by-estoppel doctrine). We are also reluctant to adopt the doctrine here because, given the probation officer's equivocating statements, it is not clear that the officer affirmatively told defendant his gun possession was lawful, which the defense seems to require. See United States v. W. Indies Transp., Inc., 127 F.3d 299, 313 (3d Cir. 1997) (rejecting entrapment-by-estoppel defense because defendants "failed to establish a necessary element of the defense—that government officials told them that their conduct was lawful"). Accordingly, we decline to adopt the defense proposed by the dissent.

Affirmed.

FOR THE COURT:

_____
Chief Justice


¶ 14. **ROBINSON, J., dissenting.** If this were a straight-up prosecution for violation of 13 V.S.A. § 4017, I would concur. We have embraced the general rule that ignorance of the

7

law is generally no defense to a prosecution for violating that law. None of the narrow exceptions to this rule would apply to a direct prosecution of defendant for violating this statute. But this probation violation case in which a probation officer informed the probationer that his conduct, not expressly prohibited in his probation conditions and not inherently counter to community norms, would not amount to criminal behavior in violation of his probation conditions, is different. For the reasons set forth below, I dissent.

¶ 15. Two factors inform my view that defendant's reliance on his probation officer's advice may serve as a valid defense in this case. First, the general common law rule that ignorance of the law is no excuse is subject to an exception in certain cases where a defendant reasonably relies on the authoritative advice of an official responsible for enforcing the law—or in this case, the probation conditions. This case meets the requirements of a narrow exception to the general common law rule. Second, the primary purpose of probation is not to protect the public but rather to rehabilitate the probationer. That purpose is especially served by applying the narrow exception described above.

## I. An Exception to the General Rule Regarding Mistake of Law Applies Here

¶ 16. There is a widely recognized due-process-based exception to the general common law rule concerning ignorance of the law, and it applies here.

### A. The "Reliance" Exception to the General Rule

¶ 17. Ignorance of the law may be an excuse in narrow circumstances in which a defendant relies on an official interpretation from an appropriate public officer. This Court has reaffirmed the general proposition that ignorance of the law is no excuse. See, e.g., State v. Woods, 107 Vt. 354, 356-57, 179 A. 1, 2 (1935) (holding that where defense is based upon mistake of law, presumption "that everyone is conclusively presumed to know the law [is] of unquestioned application in Vermont as elsewhere, both in civil and criminal cases"). But this rule is not without exception. "Modern courts and commentators have brought more nuances" to the subject, and "the broad proposition that ignorance of the law is no excuse . . . is subject to 'numerous exceptions

8

and qualifications.' " State v. Witham, 2016 VT 51, ¶ 28, 202 Vt. 97, 147 A.3d 1005 (Robinson, J., concurring) (quoting 1 W. LaFave, Substantive Criminal Law § 5.6(a), at 394 (2d ed. 2003)). One exception recognized in the Model Penal Code is that:

> A belief that conduct does not legally constitute an offense is a defense to a prosecution for that offense based upon such conduct when . . . [an individual] acts in reasonable reliance upon an official statement of the law, afterward determined to be invalid or erroneous, contained in . . . an official interpretation of the public officer or body charged by law with responsibility for the interpretation, administration or enforcement of the law defining the offense.

Model Penal Code § 2.04(3)(b)(iv) (Am. Law Inst. 2016).

¶ 18. The U.S. Supreme Court applied this reasoning to reverse a conviction for picketing near a courthouse in Cox v. Louisiana, 379 U.S. 559 (1965). The Court explained that the Chief of Police who was managing law enforcement at the demonstration told the demonstrators they could stand where they did. Id. at 571.

> Thus, the highest police officials of the city, in the presence of the Sheriff and Mayor, in effect told the demonstrators that they could meet where they did, 101 feet from the courthouse steps, but could not meet closer to the courthouse. In effect, appellant was advised that a demonstration at the place it was held would not be one "near" the courthouse within the terms of the statute.

Id. Relying on its prior analysis of the due process implications of affirming a conviction under analogous circumstances, the Court reversed the conviction. Id. (citing Raley v. Ohio, 360 U.S. 423 (1959)). The Court explained that in Raley, it held that "the Due Process Clause prevented conviction of persons for refusing to answer questions of a state investigating commission when they relied upon assurances of the commission, either express or implied, that they had a privilege under state law to refuse to answer, though in fact this privilege was not available to them." Id.

¶ 19. More recently, the Pennsylvania Supreme Court reviewed dozens of cases applying the "due process reliance doctrine" described above to identify its contours. Commonwealth v. Kratsas, 764 A.2d 20, 32 (Pa. 2001) (citations omitted). The court identified several themes in the

9

caselaw. "First, in order to support invocation of the doctrine, most jurisdictions require that there be an affirmative representation that certain conduct is legal." Id. "Mere laxity in law enforcement" is not enough. Id. at 33. Second, "the representation should be made by an official or a body charged by law with responsibility for defining permissible conduct respecting the offense at issue." Id. at 33; see also United States v. Spires, 79 F.3d 464, 466-67 (5th Cir. 1996) (declining to allow "entrapment by estoppel" defense against prosecution for violating federal prohibition of firearms possession for convicted felons because official who advised defendant to take gun home and put it away was not federal government agent but, rather, worked for federally funded but state operated investigative unit). Third, the defendant must actually believe or rely on the official's statements. Kratsas, 764 A.2d at 33. And "[f]inally, the view is commonly held that reliance must be in good faith and reasonable given the identity of the government official, the point of law represented, and the substance of the statement." Id. These factors resonate with those described above in the Model Penal Code.

¶ 20. Although Vermont has not had occasion to consider the doctrine described in the Model Penal Code and variously described as "entrapment by estoppel" or "due process reliance," in this context, and with the limitations described above, the doctrine offers a sensible way of balancing the due process considerations at stake with the general rule that ignorance of the law is no excuse.

### B. Application of the Defense

¶ 21. The facts of this case meet the stringent requirements for the doctrine's applicability. In particular, defendant's probation officer made a statement about the law that turned out to be erroneous. The probation officer had sufficient authority over the enforcement of defendant's probation to qualify as an official charged by law with defining permissible conduct under the probation order. And under the circumstances, defendant reasonably relied on the advice.

¶ 22. First, following an evidentiary hearing, the trial court found, "[d]efendant had a conversation with his probation officer in which his probation officer incorrectly informed defendant that he could possess a firearm." This finding is straightforward and supported by the evidence. The State has not challenged the finding on appeal. That should be the end of the conversation. See State v. Rutter, 2011 VT 13, ¶ 6, 189 Vt. 574, 15 A.3d 132 (mem.) ("We apply a deferential standard of review to the trial court's factual findings and will affirm those findings if supported by the evidence.").

¶ 23. The majority looks past this finding and assesses the transcript of the violation of probation hearing itself. It concludes based on its read of the transcript that the probation officer equivocated and "made clear that although, in his opinion, defendant could possess a firearm, he was not certain whether firearm possession constituted criminal behavior in defendant's circumstances." See ante, ¶ 10. The majority's reinterpretation of the record is unsupported by the record itself and deviates from our standard of review.

¶ 24. In initially describing his discussion with defendant, the probation officer acknowledged that when asked whether defendant could ever use a firearm, he looked over defendant's charges, asked defendant if he had any other felonies or "anything anywhere else," and then said, "I don't see why you can't." That's a straightforward statement that does not signal that the probation officer lacked confidence in his conclusion, or that he was "not certain whether firearm possession constituted criminal behavior in defendant's circumstances." In fact, nothing that the probation officer communicated to defendant signaled any reservation or lack of confidence.

¶ 25. The majority may be inferring that when the probation officer testified, "I told him that, in my opinion, you could; but . . . I'm not an attorney," he meant that he, the probation officer, told defendant, "I'm not an attorney." If so, I find that to be a strained reading of the testimony. I understand the, "but I'm not an attorney" to be the probation officer's acknowledgment to the court, not a continuation of his description of his statement to the defendant during their meeting.

11

My understanding is informed by the flow of the back-and-forth, including the probation officer's previous three answers, in which he consistently testified that he told defendant that he believed defendant could use a firearm and did not suggest that he qualified this opinion in any way.

¶ 26. I'm no more qualified than the majority to definitively interpret the transcript. That's why we defer to trial courts' factual findings. They have the opportunity to hear the testimony live and in context, to read non-verbal clues, and to discern meaning from more than the flat words on a cold page. See, e.g., Salve Regina Coll. v. Russell, 499 U.S. 225, 233 (1991) (explaining that deferential review is appropriate where trial court is "better positioned" to decide issues of fact). Here, the trial court did not rule against defendant because it concluded that the probation officer's statements were in some way equivocal. The court ruled against defendant because it did not believe it had the discretion to "weigh the equities of particular circumstances in deciding whether there has been a violation of probation."

Second, defendant's probation officer was a designee of the Commissioner of Corrections, under whose supervision defendant was placed. See 28 V.S.A. § 202. The probation officer was in a position to decide whether or not to recommend a probation violation complaint if defendant violated a term of probation. See, e.g., DOC Policy #346, http://doc.vermont.gov/about/policies/rpd/correctional-services-301-550/335-350-district-offices-general/346 [https://perma.cc/SMB9-TQDA] (describing factors to be considered by correctional staff before seeking court intervention). Post-conviction, probationers do not necessarily have legal counsel of their own to consult regarding questions concerning the requirements of probation.

¶ 27. We have concluded that defendants receive fair notice through probation officers' instructions that conduct is proscribed or required, even if the proscription or requirement is not expressly described in the probation conditions. See, e.g., State v. Kane, 2017 VT 36, ¶ 20, __ Vt. __, 169 A.3d 762 (explaining that fair notice of meaning and specific requirements of particular probation conditions "may be provided by the instructions and directions given to defendant by his or her probation officer" (quotation omitted)); State v. Provost, 2014 VT 86A, ¶ 15, 199 Vt.

12

568, 133 A.3d 826 (rejecting claim that defendant did not have fair notice that failure to complete specified programming before end of his probationary period would subject him to violation because "defendant was specifically informed by his probation officer that he must complete the third scheduled intake for DV Solutions or he would be cited for violating probation."); State v. Gleason, 154 Vt. 205, 216, 576 A.2d 1246, 1252 (1990) (explaining that due process requires notice of what acts constitute violation and instructions from probation officer can serve to provide notice). Although we have emphasized that "[t]he power to impose probation conditions rests with the court, not employees of the DOC," State v. Putnam, 2015 VT 113, ¶ 64, 200 Vt. 257, 130 A.3d 836, we have recognized that "[d]elegation of the implementation of probation conditions is necessary to require a defendant to participate in rehabilitative programs appropriate to the defendant's needs at a particular time in the probation period." State v. Moses, 159 Vt. 294, 300, 618 A.2d 478, 482 (1992).

¶ 28.    Given these factors, with respect to the requirements of defendant's probation, defendant's probation officer is analogous to the state investigating commission that wrongly assured witnesses that they had a legal privilege to refuse to answer, see Raley, 360 U.S. at 423, or the police chief overseeing a protest who allowed demonstrators to meet 100 feet from the courthouse. See Cox, 379 U.S. at 571. Defendant's probation officer did not have the authority to authorize defendant to violate his express probation conditions, but the probation officer's duties and authority with respect to interpretation and enforcement of those conditions is such that his assurances may give rise to the due-process based defense described above, provided the other requirements of that defense are satisfied.

¶ 29.    Third, under all of these circumstances, defendant's reliance on his probation officer's statements was reasonable.[3] The conduct at issue was proscribed by implication through

---

[3] That he did rely on his probation officer's statements is undisputed. The trial court found, "The court acknowledges that Defendant was relying on his probation officer's statement. It understands that probationers primarily rely on their probation officers to understand the nuances of their conditions."

the general prohibition against engaging in "criminal behavior," but was not expressly identified in the probation certificate. In fact, the certificate expressly advised, "Under the Federal Gun Control Act, any person who has been convicted of a felony may not lawfully own, use or possess a firearm." The fact that the certificate expressly identified the <u>federal law</u> that prohibited convicted felons from possessing firearms but made no mention of any laws potentially impacting the lawfulness of defendant's firearms possession makes defendant's failure to conduct further independent research after soliciting his probation officer's advice all the more reasonable. And the fact that defendant <u>did</u> solicit his probation officer's advice is important. He did not simply assume that his conduct was consistent with his probation conditions; he made a reasonable effort to determine his rights and obligations by asking his probation officer.

¶ 30. Moreover, and significantly, defendant's alleged criminal violation—possession of a firearm following a misdemeanor domestic assault conviction—is not conduct that, in the absence of the statute, would be counter to community norms. The distinction between offenses that are inherently wrong (e.g., murder), and those that are criminal merely because they are prohibited by statute (e.g., jaywalking), described in Latin and much legal writing as malum in se and malum prohibitum, is relevant to my analysis. See <u>malum in se</u> and <u>malum prohibitum</u> Black's Law Dictionary (10th ed. 2014). However, I am not drawing the line between these categories based on an evaluation of "moral turpitude," as we have in prior cases. See, e.g., <u>State v. Fournier</u>, 123 Vt. 439, 440, 193 A.2d 924, 925 (1963); see also <u>In re Berk</u>, 157 Vt. 524, 528-29, 602 A.2d 946, 948 (1991) (recognizing that term "moral turpitude" is "amorphous at best" (quotation omitted)). What's significant for my purposes is that defendant's admitted conduct that was proscribed by 13 V.S.A. § 4017—possessing a firearm following a misdemeanor domestic assault conviction—is illegal because lawmakers have concluded that such a restriction promotes sound public policy. There is nothing inherently offensive about his conduct.[4] In fact, even defendant's

---

[4] Some commentators have argued that in modern times, when so much conduct not previously deemed criminal is unlawful, the "common law fiction" that all people are presumed to

own probation officer, a criminal justice professional, was unaware of the proscription. Defendant's reliance on his probation officer's advice was reasonable.

## II. The Specific Purpose of Probation Supports Application of the Reliance Defense

¶ 31.    Even if we did not adopt the narrow "reliance defense" as a general exception to the common law rule regarding ignorance of the law, we should apply the exception in the context of probation conditions. The distinct purpose of probation, as contrasted with our criminal laws more broadly, supports application of the defense in the context of violations of probation.

¶ 32.    The purpose of probation is to assist the offender in leading a law-abiding life. See 28 V.S.A. § 252(a) ("The conditions of probation shall be such as the court in its discretion deems reasonably necessary to ensure that the offender will lead a law-abiding life or to assist the offender to do so."); id. § 252(b)(18) (providing that court may require defendant to "satisfy any other conditions reasonably related to his or her rehabilitation"). In describing the nature and purposes of probation, we have explained,

> Because the primary goal of probation . . . is rehabilitation of the defendant, the relationship between a defendant and his or her probation officer should not be founded on fear, intimidation, or authoritarianism, but on trust, openness, and the commonly held goal of restoring the defendant to useful and productive citizenship.

State v. Powers, 2016 VT 110, ¶ 37, 203 Vt. 388, 157 A.3d 39 (quotation omitted). The criminal laws remain on the books to protect the community from lawlessness; the focus of the probation system is to encourage probationers to live lawful, and law-abiding lives. It is hard to imagine

---

know the law fails "to reconcile effectively the dilemma created by a penal law that purports to punish only subjective culpability and yet punishes even those who believe their action to be legal and therefore not wrongful." T. White, Reliance on Apparent Authority as a Defense to Criminal Prosecution, 77 Colum. L. Rev. 775, 784 (1977). Adherents to this view argue for modification of the mistake-of-law rule, at least for malum prohibitum, to apply only where the actor's failure to know the law was the result of the actor's own fault. Id. (citations omitted). I don't make this stronger argument. My point is only that in the context of the general probation condition that defendant not engage in criminal behavior, and given the record here, it was not unreasonable for defendant to believe that his conduct, which was not otherwise inherently wrongful, was authorized. Had he relied on his probation officer's inaccurate advice that he could commit robbery or assault, such reliance would not have been reasonable.

how imposing punishment in the form of probation (or deferred sentence) revocation for the violation of a probation condition that a defendant violated with no wrongful intent, upon a reasonable belief that the conduct was not violative of any probation conditions, promotes the rehabilitative purposes of probation.

¶ 33. The various rationales that justify the general common law principle, and its effect of allowing punishment for conduct that a defendant did not know was wrongful, are far less compelling in the context of probation condition violations. Thomas White has identified three historical justifications for the general rule. See T. White, supra, at 785-86. First, a justification ascribed to nineteenth century English jurist John Austin is that "if ignorance of the law were recognized as an excuse, the defendants would always defend on this ground, and courts would be confronted with questions they could not solve." Id. at 785. Where the ignorance of the law is based on proof that a defendant reasonably relied on an interpretation by a responsible official, the problems of proof, and the fear that the defense would become a first-line litigation strategy for every criminal defendant, do not apply. Second, Oliver Wendell Holmes's rationale, that "the purpose of the criminal law [is] to protect the community and to deter the commission of criminal acts, without consideration of the subjective moral culpability of the wrongdoer," id. at 786, is squarely at odds with the rehabilitative purpose of probation described above. And third, the rationale attributed to Professor Jerome Hall that "allow[ing] the mistake of law defense would undermine the paramount importance of the courts' and legislatures' interpretations and declarations of the law," id. at 786-87, packs far less punch when a defendant is reasonably relying on the interpretation of an appropriate official.

¶ 34. Allowing the reliance defense in the context of this case would not undermine the public protection goals of 13 V.S.A. § 4017 one bit. Defendant can be criminally prosecuted for violating the statute. No exception to the general common law rule would apply to that prosecution. But insofar as the purpose of his probation is his rehabilitation—helping him to lead a law-abiding life—violating him under these circumstances would not promote those goals.

16

¶ 35.    The trial court in this case did not believe that it had the discretion to account for defendant's reliance on his probation officer's advice in adjudicating the violation; for the reasons set forth above, I believe the trial court did have such discretion.  I would remand for consideration of the trial court's findings and defendant's evidence in light of the principles set forth above.

_____
Associate Justice